**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE NATIONAL COUNCIL OF
AGRICULUTRAL EMPLOYERS.,

        Plaintiff,

    v.

UNITED STATES DEPARTMENT OF LABOR,
*et al.*,

        Defendants.

Civil Action No. 1:22-cv-03569-RC

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY**
**RESTRAINING ORDER**

**TABLE OF CONTENTS**

INTRODUCTION...................................................................................................................1

STATUTORY AND REGULATORY FRAMEWORK..........................................................2

    A.     Statutory Framework...........................................................................................2

    B.     Regulatory Framework.........................................................................................3

           1.     Prior Regulatory Framework....................................................................3

           2.     Development of the Challenged Final Rule..............................................4

           3.     The January 2021 Draft Final Rule...........................................................4

           4.     The Final Rule............................................................................................5

LEGAL STANDARD .............................................................................................................6

ARGUMENT .........................................................................................................................6

I.      Plaintiff Has Failed to Demonstrate Standing, Let Alone Irreparable Harm...................6

    A.     Plaintiff Has Not Demonstrated Standing............................................................6

    B.     Plaintiff Has Not Demonstrated Irreparable Harm...............................................8

II.     PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE
MERITS. ..................................................................................................................11

III.    THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN
FAVOR OF DENYING PLAINTIFF'S MOTIONS. ..................................................14

IV.    THE COURT SHOULD NOT TEMPORARILY RESTRAIN DEFENDANTS
FROM ENFORCING THE CHALLENGED RULE AGAINST NONPARTIES
OR UNHARMED UNIDENTIFIED MEMBERS OF PLAINTIFF'S
ORGANIZATION. ....................................................................................................15

CONCLUSION......................................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

*Aamer v. Obama,*
      742 F.3d 1023 (D.C. Cir. 2014)..........................................................................6

*Abbott Labs. v. Gardner,*
      387 U.S. 136 (1967)..........................................................................16

*Air Transp. Ass'n of Am., Inc. v. Export-Import Bank,*
      840 F. Supp. 2d 327 (D.D.C. 2012) .............................................................10-11

*Am. Chemistry Council v. Dep't of Transp.,*
      468 F.3d 810 (D.C. Cir. 2006)..........................................................................7

*Amoco Prod. Co. v. Vill. of Gambell,*
      480 U.S. 531 (1987)..........................................................................14

*Cal. Ass'n of Private Postsecondary Schools v. Devos,*
      344 F. Supp. 3d 158 (D.D.C. 2018) .............................................................10

*California v. Azar,*
      911 F.3d 558 (9th Cir. 2018)..........................................................................16

*California v. Texas,*
      141 S. Ct. 2104 (2021)..........................................................................6

*Chamber of Com. of U.S. v. EPA,*
      642 F.3d 192 (D.C. Cir. 2011)..........................................................................7

*Chaplaincy of Full Gospel Churches v. England,*
      454 F.3d 290 (D.C. Cir. 2006)..........................................................................9

*Davis v. PBGC,*
      571 F.3d 1288 (D.C. Cir. 2009)..........................................................................10

*Doe 2 v. Shanahan,*
      917 F.3d 694 (D.C. Cir. 2019)..........................................................................16

*Electronic Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
      878 F.3d 371 (D.C. Cir. 2017)..........................................................................7

*Food & Water Watch, Inc. v. Vilsack,*
      808 F.3d 905, (D.C. Cir. 2015)......................................................................6, 7

*FW/PBS, Inc. v. City of Dall.,*
      493 U.S. 215 (1990)..........................................................................7

*Gill v. Whitford,*
    138 S. Ct. 1916 (2018) .......................................................................... 15, 16

*Gordon v. Holder,*
    632 F.3d 722 (D.C. Cir. 2011) ...................................................................... 6

*Gulf Oil Corp. v. Dep't of Energy,*
    514 F. Supp. 1019 (D.D.C. 1981) ............................................................... 11

*Hecht Co. v. Bowles,*
    321 U.S. 321 (1944) ..................................................................................... 16

*Humane Society of the United States v. U.S. Dep't of Agric.,*
    41 F.4th 564 (D.C. Cir. 2022) ........................................................... 2, 12, 13

*Hunt v. Wash. State Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ....................................................................................... 6

*John Doe Company v. CFPB,*
    235 F. Supp. 3d 194 (D.D.C. Feb. 17, 2017) ................................................ 8

*Kennecott Utah Copper Corp. v. Department of Interior,*
    88 F.3d 1191 (D.C. Cir. 1996) ............................................................... 12, 13

*Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania,*
    140 S. Ct. 2367 (2020) ................................................................................. 11

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ....................................................................................... 6

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ..................................................................................... 15

*Maryland v. King,*
    567 U.S. 1301 (2012) ................................................................................... 14

*Mexichem Specialty Resins, Inc. v. EPA,*
    787 F.3d 544 (D.C. Cir. 2015) ................................................................. 6, 11

*Munaf v. Geren,*
    553 U.S. 674 (2008) ....................................................................................... 5

*Mylan Pharm, Inc. v. Shalala,*
    81 F. Supp. 2d 30 (D.D.C. 2000) .................................................................. 9

*National Mining Association v. Jackson,*
    768 F. Supp. 2d 34 (D.D.C. 2011) .............................................................. 11

*Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs,*
    145 F.3d 1399 (D.C. Cir. 1998) ...................................................................... 17

*Nat'l Propane Gas Ass'n v. DHS,*
    534 F. Supp. 2d 16 (D.D.C. 2008) .................................................................. 14

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................................... 6, 14

*Pursuing America's Greatness v. FEC,*
    831 F.3d 500 (D.C. Cir. 2016) ........................................................................ 14

*Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA,*
    573 F. Supp. 3d 324 (D.D.C. 2021) .................................................................. 7

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) ................................................................................ 6, 7, 11

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ...................................................................................... 6

*Trump v. Hawaii,*
    138 S. Ct. 2392 (2018) ............................................................................... 15, 17

*Weinberger v. Romero-barcelo,*
    456 U.S. 305 (1982) ........................................................................................ 16

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Sers.,*
    485 F. Supp. 3d 1 (D.D.C. 2020) ...................................................................... 8

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008) ......................................................................................... 5, 6

*Wreal, LLC v. Amazon.com,*
    840 F.3d 2144 (11th Cir. 2016) ........................................................................ 9

**STATUTES**

5 U.S.C. § 553 ........................................................................................... 11, 13

5 U.S.C. § 702 ................................................................................................ 16

5 U.S.C. § 703 ................................................................................................ 16

5 U.S.C. § 706 ................................................................................................ 16

8 U.S.C. § 1101 ................................................................................................ 2

8 U.S.C. § 1184 ............................................................................................ 2, 3

8 U.S.C. § 1188......................................................................................................2, 3, 4

**REGULATIONS**

20 C.F.R. part 655.....................................................................................................3

20 C.F.R. § 655.102.................................................................................................10

29 C.F.R. part 501....................................................................................................3

Adverse Effect Wage Rate Methodology for the Temporary Employment of H-2A
  Nonimmigrants in Non-Range Occupations in the United States,
  85 Fed. Reg. 70,445 (Nov. 5, 2020)..........................................................................4

Delegation of Authority and Assignment of Responsibility; Secretary's Order 6-2010,
  75 Fed. Reg. 66,268 (Oct. 27, 2010)..........................................................................4

Secretary's Order 01-2014,
  79 Fed. Reg. 77,527 (Dec. 24, 2014)..........................................................................4

Temporary Agricultural Employment of H-2A Aliens in the United States,
  75 Fed. Reg. 6,884 (Feb. 12, 2010)..........................................................................3

Temporary Agricultural Employment of H-2A Nonimmigrants in the United States,
  84 Fed. Reg. 36,168 (July 26, 2019)...................................................................... 4, 11

Temporary Agricultural Employment of H-2A Nonimmigrants in the United States,
  87 Fed. Reg. 61,660 (Oct. 12, 2022)............................................................. *passim*

**OTHER AUTHORITIES**

Announcements, U.S. Department of Labor Withdraws Forthcoming H-2A Temporary
  Agricultural Program Rule for Review (Jan. 20, 2021),
  https://www.dol.gov/agencies/eta/foreign-labor/news............................................4

Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. (3d ed.)........................ 15

## **INTRODUCTION**

In filing its motion for a Temporary Restraining Order, Plaintiff sought emergency relief and an expedited hearing. But any supposed emergency is of Plaintiff's own making. Plaintiff's entire motion rests on the validity of the Department of Labor ("DOL")'s withdrawal of a Draft Final Rule from the Office of the Federal Register ("OFR") in January 2021 ("2021 Draft Final Rule"). Plaintiff offers no reason why it waited nearly *two years* to file this TRO motion. Plaintiff's delay in seeking a TRO justifies denying the extraordinary remedy Plaintiff seeks.

Plaintiff's motion fails for additional reasons. Plaintiff—a trade association claiming to bring this action on behalf of agricultural employer members—has not satisfied the well-established associational standing criteria. Nowhere in its papers does Plaintiff identify an injured member on whose behalf it is seeking relief, let alone demonstrate how that injured member has suffered a concrete and particularized actual or imminent injury caused by Defendants' conduct. Plaintiff asserts that November 30—five days after the instant motion was filed—is the moment at which irreparable harm will begin to accrue. But that is, by Plaintiff's own admission, the *earliest* date at which an employer could file a job order that would be governed by the 2022 Rule. In any event, Plaintiff does not point to any member who is imminently filing a job order that will be subject to the new final rule. Plaintiff has fallen far short of demonstrating the type of certain and great injury necessary to show irreparable harm.

Nor has Plaintiff demonstrated a substantial likelihood of success on the merits. Plaintiff asserts two related arguments as to why it is likely to succeed on the merits: that the withdrawal of the 2021 Draft Final Rule was invalid because DOL failed to solicit comments on that withdrawal and that the promulgation of the 2022 Rule was invalid because DOL allegedly failed to seek comment on that rule. Neither argument is likely to succeed.

First, the 2022 Rule was the result of an extensive notice-and-comment process. On July 26, 2019, DOL initiated a rulemaking proceeding when it published a Notice of Proposed Rulemaking requesting public comment on proposals intended to modernize and simplify the process by which the agency reviews employers' applications for "H-2A" certifications and

enhance DOL's enforcement capabilities. After carefully considering comments, DOL published a final rule addressing the proposals and comments received on October 12, 2022, which took effect on November 14, 2022 with a 90-day transition period. 87 Fed. Reg. 61,660 (Oct. 12, 2022). Plaintiff's challenge to the 2022 Rule based on an argument that the agency failed to undergo notice and comment is meritless.

Second, the 2021 Draft Final Rule was just that: a not-yet-finalized final rule that was never promulgated. Plaintiff's argument to the contrary relies primarily on *Humane Society of the United States v. U.S. Dep't of Agric.*, 41 F.4th 564 (D.C. Cir. 2022). But that decision does not control the outcome here. In *Humane Society*, the court held that the relevant agency action could only be repealed through further notice-and-comment proceedings because it had been made available by the Office of the Federal Register for public inspection, a step that did not occur as to the 2021 Draft Final Rule at issue in this case. The agency action in *Humane Society* is further distinguishable on grounds discussed more fully below. At most, and as Plaintiff acknowledges, "there is an as-yet-unsettled" question presented here. ECF No. 4-1 at 3 ("TRO Mot."). That is a far cry from a substantial likelihood of success on the merits.

The public interest does not favor Plaintiff's motion either. The regulatory process at issue began in July 2019 with a Notice of Proposed Rulemaking that, as Plaintiffs recognize, attracted substantial attention and a significant number of comments. That process culminated in a duly promulgated rule more than three years later. Particularly in light of Plaintiff's dilatory tactics, a TRO that would prolong that process—and would delay the 2022 Rule's enhanced enforcement capabilities and worker protections—is unwarranted here.

Plaintiff's motion for a TRO should be denied. For the same reasons, and without further briefing, the Court should deny Plaintiff's request for a preliminary injunction.

## STATUTORY AND REGULATORY FRAMEWORK

### A.    Statutory Framework.

The INA, as amended by the Immigration Reform and Control Act of 1986 ("IRCA") establishes an "H-2A" nonimmigrant visa classification for a worker "having a residence in a

foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services . . . of a temporary or seasonal nature." 8 U.S.C. § 1101(a)(15)(H)(ii)(a); *see also* 8 U.S.C. §§ 1184(c)(1), 1188. The statute requires multiple federal agencies to take several steps before foreign workers may be admitted to the United States under this classification. A prospective H-2A employer must first apply to DOL for a certification that:

> (1) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and

> (2) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1). Congress prohibited DOL from issuing this certification—known as a "temporary agricultural labor certification"—unless both of the above-referenced conditions are met and none of the conditions in 8 U.S.C. § 1188(b) apply concerning strikes or lock-outs, labor certification program debarments, workers' compensation assurances, and positive recruitment.

Once an employer obtains a temporary agricultural labor certification from DOL, it may then file a petition for a nonimmigrant worker with the Department of Homeland Security. *See* 8 U.S.C. § 1184(c). If the employer's petition is approved, the foreign workers whom it seeks to employ must, generally, apply for a nonimmigrant H-2A visa at a U.S. embassy or consulate abroad, and seek admission to the United States with U.S. Customs and Border Protection.

**B.   Regulatory Framework.**

**1.   Prior Regulatory Framework**

Since 1987, DOL has operated the H-2A temporary labor certification program under regulations promulgated pursuant to the Immigration and Nationality Act. The standards and procedures applicable to the certification and employment of workers under the H-2A program are found in 20 C.F.R. part 655, subpart B, and 29 C.F.R. part 501. Prior to November 14, 2022, most

of DOL's regulations governing the H-2A program were published in 2010.  75 Fed. Reg. 6,884 (Feb. 12, 2010).

### 2.  Development of the Challenged Final Rule

On July 26, 2019, the Department of Labor ("DOL") published an NPRM requesting public comment on proposals intended to modernize and simplify the process by which the Office of Foreign Labor Certification ("OFLC")[1] reviews employers' job orders and applications for temporary agricultural labor certifications for use in petitioning the Department of Homeland Security to employ H-2A workers.  *See* 84 Fed. Reg. 36,168.  DOL also proposed to amend the regulations for enforcement of contractual obligations applicable to the employment of H-2A workers and workers in corresponding employment administered by the Wage and Hour Division,[2] and to amend the Wagner-Peyser Act regulations administered by the Employment and Training Administration to provide consistency with revisions to H-2A program regulations governing the temporary agricultural labor certification process.  *Id.*  The NPRM invited written comments from the public on all aspects of the proposed amendments to the regulations.

In late 2020, DOL published a final rule addressing only the aspect of the 2019 NPRM governing the methodology by which the agency determines the hourly adverse effect wage rates ("AEWR") for non-range agricultural occupations.  85 Fed. Reg. 70,445 (Nov. 5, 2020).[3]

### 3.  The January 2021 Draft Final Rule

On January 15, 2021, DOL announced and posted on OFLC's website an unpublished final rule on aspects of the NPRM other than those that were addressed in late 2020, explaining that the

---

[1] The Secretary of Labor has delegated the authority to issue temporary agricultural labor certifications to the Assistant Secretary for Employment and Training, who in turn has delegated that authority to OFLC.  *See* 75 Fed. Reg. 66,268 (Oct. 27, 2010).

[2] The Secretary of Labor has delegated the responsibility under 8 U.S.C. § 1188(g)(2) to assure employer compliance with the terms and conditions of employment under the H-2A program to the Wage and Hour Division.  *See* 79 Fed. Reg. 77,527 (Dec. 24, 2014).

[3] Earlier this year, a district court vacated the November 5, 2020 AEWR rule and remanded to DOL for further rulemaking consistent with the court's opinion.  *See United Farm Workers, et al. v. U.S. Dep't of Labor, et al.*, No. 20-cv-01690-DAD-BAK, 2022 WL 1004855, at *6-7 (E.D. Cal. April 4, 2022).

rule was pending publication in the Federal Register with a 30-day delayed effective date.  *See* Announcements, U.S. Department of Labor Withdraws Forthcoming H-2A Temporary Agricultural Program Rule for Review (Jan. 20, 2021), https://www.dol.gov/agencies/eta/foreign-labor/news; *see also* Compl. Ex. A.  The 2021 Draft Final Rule included, on every page, a disclaimer that explained that it was not yet the final regulation: "Only the version published in the Federal Register is the official regulation."  Compl. Ex. A.  The disclaimer also noted that the 2021 Draft Final Rule had not yet been made available for public inspection.  *Id.* ("This regulation has been submitted to [OFR] for publication, and is currently pending placement on public inspection . . . .").  DOL withdrew this document from the Office of the Federal Register, prior to the document being made available for public inspection, for the purpose of reviewing issues of law, fact, and policy raised by the rule.  87 Fed. Reg. at 61,664 n.11.  The January 20 withdrawal was publicly announced on DOL's website and the public, including Plaintiff, had access to that announcement as of that date.  *See* Compl. Ex. D.

### 4.  The Final Rule

On October 12, 2022, DOL published in the Federal Register a final rule addressing all aspects of the NPRM other than those that were addressed in late 2020 with respect to the AEWR methodology.  87 Fed. Reg. 61,660 (Oct. 12, 2022) (the "2022 Rule" or "2022 Final Rule"). Among the issues addressed in the 2022 Final Rule are improving the minimum standards and conditions of employment that employers must offer to workers; expanding DOL's authority to use enforcement tools, such as program debarment for substantial violations of program requirements; modernizing the process by which DOL receives and processes employers' job orders and applications for temporary agricultural labor certifications, including the recruitment of American workers; and revising the standards and procedures for determining the prevailing wage rate.  *Id.*  The 2022 Rule has been in effect since November 14, 2022 with a 90-day transition period.  *Id.*; *see also id.* at 61,792-93.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right," *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted), and "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must establish by "clear evidence" that (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Id.* at 20. The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). The "first and most important factor" is whether the moving party has "established a likelihood of success on the merits." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014). The Supreme Court has also stressed, however, that a preliminary injunction cannot issue based on a mere "possibility" of harm. *Winter*, 555 U.S. at 22. Rather, as long held in this Circuit, the moving party must establish that the claimed injury is "both certain and great," "actual and not theoretical." *E.g.*, *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015). An application for a temporary restraining order is governed by similar analysis. *See, e.g., Gordon v. Holder*, 632 F.3d 722, 723–24 (D.C. Cir. 2011).

## ARGUMENT

**I.    Plaintiff Has Failed to Demonstrate Standing, Let Alone Irreparable Harm.**

**A.  Plaintiff Has Not Demonstrated Standing.**

Because "standing is not dispensed in gross," Plaintiff "must demonstrate standing for each claim that [it] press[es] and for each form of relief that [it] seek[s.]" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Plaintiff "need[s] to assert an injury that is the result of [the challenged rule's] actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). But Plaintiff fails to clearly identify any "injury in fact" that is "fairly . . . trace[able]" to Defendants' enforcement of any particular provision of the challenged rule and that will "be redressed by a favorable decision," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *see also Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, (D.C. Cir. 2015)

(addressing requirements for organizational standing).  Accordingly, it lacks standing to advance any of its claims.

Membership organizations may assert standing on behalf of their members, but in order to do so they must show that at least one member "would otherwise have standing to sue in [its] own right." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343–44 (1977); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 494–96 (2009).  Associational standing doctrine thus requires that petitioners "*identify* members who have suffered the requisite harm." *Id.* at 499 (emphasis added); *see Am. Chemistry Council v. Dep't of Transp.*, 468 F.3d 810, 815, 820 (D.C. Cir. 2006) (holding that "an organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact").  Plaintiff fails to do so here.

Although Plaintiff submits three declarations in support of its motion, none is from an individual member claiming to be injured by any provision of the 2022 Rule.  Nor does Plaintiff's complaint or motion name such a member.  Instead, Plaintiff relies on broad claims about harm to unnamed members.  Marsh Decl. ¶¶ 24-26.  But "it is not enough to aver that unidentified members have been injured." *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011).  Instead, Plaintiff must "make *specific* allegations establishing that at least one *identified* member had suffered or would suffer harm." *Summers*, 555 U.S. at 498 (emphases added); *see FW/PBS, Inc. v. City of Dall.*, 493 U.S. 215, 235 (1990) (ruling that affidavit which "fails to identify the individuals" who allegedly were injured "falls short of establishing" standing).  Plaintiff fails to do so here.[4]

---

[4] While courts in this district "disagree about whether a plaintiff-association is required to name a specific member at the pleading stage," *see Ranchers-Cattlemen Action Legal Fund, United Stockgrowers of Am. v. USDA*, 573 F. Supp. 3d 324, 334 (D.D.C. 2021), "[i]n the context of a preliminary injunction motion," a plaintiff must "'show a substantial likelihood of standing' 'under the heightened standard for evaluating a motion for summary judgment,'" *Electronic Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (quoting *Food & Water Watch*, 808 F.3d at 912-13), and, at that stage, courts agree that a plaintiff-association must demonstrate that a specific member has standing, *see Ranchers-Cattlemen Action Legal Fund*, 573 F. Supp. 3d at 335.

At a minimum, Plaintiff fails to demonstrate standing to press its challenge to DOL's decision from January 20, 2021, to withdraw a draft final rule from the Office of the Federal Register prior to its publication in the context of the present motion. Nine pages of Plaintiff's memorandum address its purported likelihood of success on the merits of establishing that Defendants' conduct was invalid. ECF No. 4-1 at 7-15. Except for one short paragraph describing Plaintiff's challenge to the 2022 Rule (which itself rests on the argument that the 2021 Draft Final Rule was invalidly repealed), *see id*. at 14-15, Plaintiff's entire "likelihood of success on the merits" section challenges DOL's 2021 withdrawal action, *see id*. at 7-14. But Plaintiff's motion does not purport to request that the Court somehow preliminarily instate the provisions of the draft final rule from January 2021. Indeed, Plaintiffs admit that "the *status quo ante* under a preliminary injunction pending final resolution of this litigation [would be] the very familiar 2010 Rule that has been in place for over a decade." ECF No. 4-1 at 3. Accordingly, there is a mismatch between Plaintiff's contention that the draft of the 2021 rule was a legally consequential final agency action and their request for relief that the status quo be preserved as of November 13, 2022—a status quo that would apply the rule as it existed *before* the January 2021 draft was published on DOL's website, and as it continued to apply following the subsequent withdrawal of that draft.[5]

Moreover, Plaintiff has made no effort to demonstrate its standing to challenge DOL's promulgation of each provision of the 2022 Rule. Again, the 2022 Rule includes a number of different provisions improving the H-2A program. *See supra* at 5; 87 Fed. Reg. at 61,665-77. And

---

[5] In the instant motion, Plaintiff does not appear to be asking for the Court to instate the provisions of the 2021 Draft Final Rule even though that is the ultimate relief Plaintiff seeks. *See* ECF No. 4-1 at 2 ("[R]eversion [to the 2021 Draft Final Rule] will be required after a *merits* judgment as the *status quo ante*.") (emphasis added). Plaintiff does not explain that request. But one plausible reason is that Plaintiff's irreparable harm assertion would be even weaker. Plaintiff asserts that its members "will be irreparably harmed in three ways." *Id*. at 2. The third alleged harm is that Plaintiff's members "will in many cases be run out of business by the increased face value and bond validity period as they struggle to obtain required surety bonds to participate in the H-2A program." *Id*. But the surety bond provisions that appear in the 2022 Rule are largely the same as those that appear in the 2021 Draft Final Rule, undermining any suggestion that instatement of the 2021 Draft Final Rule would alleviate the harm Plaintiff alleges. *See* 87 Fed. Reg. at 61,733-39.

each portion of the 2022 Rule is severable.  87 Fed. Reg. at 61,663.  Courts addressing challenges to agency rules with numerous distinct and severable provisions require the Plaintiff to show an injury caused by each specific provision of the Final Rule that they seek to enjoin.  *See, e.g.*, *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health and Human Sers.*, 485 F. Supp. 3d 1, 24-34 (D.D.C. 2020).  There is no controversy between the parties with respect to provisions of the 2022 Rule that are not causing Plaintiff's member or members an actual or imminent injury.

### B.  Plaintiff Has Not Demonstrated Irreparable Harm.

Even if Plaintiff had somehow demonstrated standing to seek an order temporarily restraining Defendants from enforcing some provision or provisions of the 2022 Rule against its unidentified members, Plaintiff certainly has not established the type of imminent injury that would be needed to secure such extraordinary relief.  "The D.C. Circuit 'has set a high standard for irreparable injury,' requiring that the injury 'be both certain and great,' and 'actual and not theoretical.'"  *John Doe Company v. CFPB*, 235 F. Supp. 3d 194, 203 (D.D.C. Feb. 17, 2017) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). But the evidence that Plaintiff has submitted in support of its claimed irreparable injury is deficient in several respects.

First, Plaintiff's attempt to attain an emergency temporary restraining order comes too late. Again, the primary claim that Plaintiff raises in its memorandum is that DOL invalidly withdrew a draft final rule from the Office of the Federal Register nearly two years ago.  *See* ECF No. 4-1 at 7-14.  Insofar as Plaintiff was somehow harmed by that action, Plaintiff's delay in bringing the issue to a Court's attention "militates against a finding of irreparable harm."  *Mylan Pharm, Inc. v. Shalala*, 81 F. Supp. 2d 30, 43-44 (D.D.C. 2000); *see also Wreal, LLC v. Amazon.com*, 840 F.3d 2144, 1248 (11th Cir. 2016) (same).  With respect to Plaintiff's one-paragraph contention that the 2022 Rule was invalidly issued, *see* ECF No. 4-1 at 14-15, that contention too rests on the validity of the January 2021 withdrawal, *id.* (asserting that because the 2021 Draft Final Rule "was a final agency action," "[n]ew notice and comment procedures were required to promulgate" the 2022 Rule).  In any event, the 2022 Rule was issued on October 12, 2022, and became effective

9

November 14, 2022, *see* Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 87 Fed. Reg. 61,660 (Oct. 12, 2022).  And the 2022 Rule's October publication was no surprise to Plaintiff.  Plaintiff's President and CEO attests that, on July 15, 2022, he was made aware that a Final Rule on the topic of the H-2A program was sent to the Office of Information and Regulatory Affairs.  Marsh Decl. ¶ 21.

Plaintiff alleges that November 30, 2022, is important because it "is the earliest date that an employer's application under the H-2A program could possibly be processed" under the new rule.  ECF No. 4-1 at 6.  But Plaintiff does not explain why it waited until the day after Thanksgiving—more than six weeks after publication and almost two weeks after its effective date—to seek a temporary restraining order, merely days before that purportedly important date. *See Mylan Pharm., Inc.*, 81 F. Supp. 2d at 44 (two-month delay "militates against a finding of irreparable harm" needed for a preliminary injunction).

Nor has Plaintiff clearly established what is notable about November 30, 2022 for irreparable harm purposes.  Plaintiff indicates that there might be a Farm Labor Contractor that has a date "of need as early as February 13, 2023," *see* ECF No. 4-1 at 17, and for that Contractor, "November 30, 2022 is the earliest date that an employer's application could possibly be processed," *id.* at 6.  But that possibility is difficult to reconcile with Plaintiff's testimony regarding "the seasonal nature of many of [its] members' farming and ranching operations[,]" Marsh Decl. ¶ 7—suggesting that February 13, 2023 may not necessarily bear the significance Plaintiff ascribes to it.  Further, that date would be the *earliest* that a job order would be submitted to a State Workforce Agency for a date of need of February 13, 2023.  *See* 20 C.F.R. § 655.102 (describing transition period); *see also* 20 CFR 655.121(b) ("employer must submit a completed job order to the NPC no more than 75 calendar days and no fewer than 60 calendar days before the employer's first date of need.").  And, as of that date, it is not clear what harm Plaintiff would suffer.  At least some aspects of the 2022 Rule (*e.g.*, changes to prevailing wage methodology) would not yet cause Plaintiff's members any monetary harm given that no wages under this new wage methodology will be paid as of November 30.  As to other aspects of the 2022 Rule that may have more

immediate effect (*e.g.*, changes to bond requirements), Plaintiff has not explained why the November 30 date (75 days before the February 13 date of need) is relevant given that proof of a surety bond is not required until filing of the Temporary Employment Certification application, *see* 20 CFR § 655.132(c), which is due 45 days prior to the date of need, *see* 20 CFR 655.130(b). Nor has Plaintiff attempted to explain with any particularity how any of its members will be harmed by this surety bond requirement.

Second, even if Plaintiff could point to some imminent monetary harm to its unidentified members, Plaintiff has not established that such monetary injuries are significant.  Plaintiff gestures generally to "[t]he unrecoverable financial loss of current users of the H-2A Program ([unidentified] members of NCAE)," ECF No. 4-1 at 15.  But the "general rule [is] that economic harm does not constitute irreparable injury." *Davis v. PBGC*, 571 F.3d 1288, 1295 (D.C. Cir. 2009).  "To be sure, economic loss sustained due to a federal administrative action is typically 'uncompensable' in the sense that federal agencies enjoy sovereign immunity[.]" *Cal. Ass'n of Private Postsecondary Schools v. Devos*, 344 F. Supp. 3d 158, 170 (D.D.C. 2018).  "But it proves too much to suggest that 'irreparable' injury exists, as a matter of course, whenever a regulated party seeks preliminarily to enjoin the implementation of a new regulatory burden." *Id*.  "Rather, an asserted 'economic harm' must 'be significant, even where it is irretrievable because a defendant has sovereign immunity.'" *Id*. (quoting *Air Transp. Ass'n of Am., Inc. v. Export-Import Bank*, 840 F. Supp. 2d 327, 335-36 (D.D.C. 2012)).  "[T]he injury must be more than irretrievable, it must also be serious in terms of its effect on the plaintiff." *Gulf Oil Corp. v. Dep't of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981).  For example, a concrete threat to "the very existence of [a plaintiff's] business" might suffice, as Plaintiff indicates.  ECF No. 4-1 at 17.  But Plaintiffs provide no concrete evidence that any one of its member's businesses are actually threatened due to enforcement of any provision of the 2022 Rule.  *See Summers*, 555 U.S. at 499.  In *National Mining Association v. Jackson*, 768 F. Supp. 2d 34 (D.D.C. 2011), the Court found a specific business's declaration in support of its contention that that it will be out of business within eighteen months to be a "conclusory projection" that fell "short of what is necessary to merit a finding of

irreparable harm" *Id.* at 52.  Here, Plaintiff fails even to provide a conclusory projection from any business.

Plaintiff also refers generally to having to "live under and understand at least four different, complex, and conflicting H-2A regimes during a small amount of time" and "having to comply with a complex, far-reaching, costly regulatory regime[.]" ECF No. 4-1 at 2, 16.  But it "fail[s] to show any specific, identifiable cost that [it] will incur because of" anything in the 2022 Rule.  *See Mexichem Specialty Resins*, 787 F.3d at 555.  Instead, Plaintiff's description of costs is painted in broad generalities, insufficient to establish the requisite irreparable harm showing.

## II.   PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS.

"[T]he APA requires agencies to publish a notice of proposed rulemaking in the Federal Register before promulgating a rule that has legal force." *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2384 (2020) (citing 5 U.S.C. § 553(b)).  And it requires that an agency provide an opportunity for comment on the proposed rule.  5 U.S.C. § 553(c).  Plaintiff claims that the 2022 Rule is invalid because DOL violated § 553.  ECF No. 4-1 at 14-15.  But DOL promulgated the 2022 Rule after it published a notice of proposed rulemaking in the Federal Register and received public comment.  *See* 84 Fed. Reg. 36,168; 87 Fed. Reg. 61,660, 61,664-77 (Oct. 12, 2022) (explaining background and addressing public comments received on the Notice of Proposed Rulemaking).  Indeed, Plaintiff acknowledges that DOL's Notice of Proposed Rulemaking that preceded the 2022 Rule generated significant public attention in the form of more than 83,000 comments.  *See* ECF No. 4-1 at 4.  Accordingly, DOL did not violate 5 U.S.C. § 553 in promulgating the 2022 Rule.

Plaintiff nonetheless maintains that DOL issued a final rule in January 2021, ECF No. 4-1 at 8, that repeal of that allegedly final rule was invalid because DOL failed to utilize notice-and-comment procedures, *id.* at 9-14, and that DOL's subsequent promulgation of the 2022 Rule was invalid because DOL did not begin the notice-and-comment process anew, *id.* at 14-15.  Plaintiff's arguments all rest on the flawed premise that the 2021 Draft Final Rule was a final rule from which

legal consequences flow. Plaintiff fails to demonstrate that they are substantially likely to succeed on establishing that threshold showing.

First, Plaintiff misreads *Humane Society*. *See* ECF No. 4-1 at 9–11. In that 2-1 decision, the D.C. Circuit held that an agency action made available by the Office of the Federal Register for public inspection could not be repealed without further notice-and-comment proceedings. *See Humane Society*, 41 F.4th at 565. The court explained:

> Rather than set the critical date at the date of publication, the Federal Register Act sets it at the date a rule is filed for public inspection. That is the "day and hour" the statute requires be noted for posterity. 44 U.S.C. § 1503. It is then that a rule becomes "valid" against the public at large. 44 U.S.C. § 1507. And it is filing a document for public inspection, not publication in the Federal Register, that the statute deems "sufficient to give [constructive] notice" of the document to affected parties. *Id.* Making a rule available for public inspection, then, provides notice to the public and carries legal consequences.

*Id.* at 570; *see also id.* at 573 (distinguishing *Kennecott Utah Copper Corp. v. Department of Interior*, 88 F.3d 1191 (D.C. Cir. 1996) (per curiam) on the basis that, "[u]nlike the rule here, the document in *Kennecott* was never made available for public inspection"). The "critical date"— the "date a rule is filed for public inspection"—never occurred as to the 2021 Draft Final Rule. Plaintiff admits as much. Compl. ¶ 56 (the 2021 Draft Final Rule "was never placed on public inspection by OFR before the incoming Biden Administration took office on January 20, 2021"). Whatever questions the court left unresolved, *see Humane Society*, 41 F.4th at 575, the decision in *Humane Society* does not suggest that Plaintiff is substantially likely to succeed on the merits here.

Plaintiff nonetheless asserts that, notwithstanding the decision in *Humane Society* and its focus on the "date a rule is filed for public inspection," other Circuit precedent establishes that all that "all that was required" was that "the regulated community had ample actual notice of the [2021 Draft Final Rule] even though it" was never made available for public inspection or published in the Federal Register. *See* ECF No. 4-1 at 12–13. The problem with Plaintiff's reliance on these cases is that what the public was aware of here was that the 2021 Draft Final Rule was *not* a final regulation. Unlike the agency action in *Humane Society*, *see* Ex. A to Compl., *Humane Society*

13

*of the U.S. v. USDA*, No. 1:19-cv-02458, ECF No. 1-1 (D.D.C. Aug. 13, 2019), the 2021 Draft Final Rule included the following in a disclaimer that appeared on every page of the draft rule: "This regulation has been submitted to the Office of the Federal Register (OFR) for publication, and is currently pending placement on public inspection at the OFR and publication in the Federal Register." Compl. Ex. A. The disclaimer concluded by making clear that this was not yet a final regulation: "Only the version published in the Federal Register is the official regulation." *Id.* Plaintiff's TRO motion omits this last sentence. *See* ECF No. 4-1 at 5. But its inclusion—again, on every single page of the 2021 Draft Final Rule—signaled to the public that a final, official regulation had not yet issued. "[A]n agency does not prescribe a rule by 'internally approv[ing] a draft version of the final regulations,' meaning that the unpublished document 'never became a rule subject to amendment or repeal.'" *Humane Society*, 41 F.4th at 573 (quoting *Kennecott Utah Copper Corp. v. Dep't of Interior*, 88 F.3d 1191 (D.C. Cir. 1996)).

Finally, even if the 2021 Draft Final Rule were a final rule, Plaintiff does not explain how it was denied any "opportunity to participate in the rule making through submission of written data, views, or arguments[,]" 5 U.S.C. § 553(b) before DOL published the 2022 Final Rule changing the longstanding status quo. To the contrary, Plaintiff explains that it "submitted comments to the Department of Labor urging it to adopt some of the proposed much-needed changes to the program[.]" Marsh Decl. ¶ 9. Plaintiff does not identify any comment that it or its members would have submitted in response to a proposed rule to withdraw the 2021 Draft Final Rule that they did not—or at least could not—have included in response to the July 2019 Notice of Proposed Rulemaking that preceded the 2022 Rule.

## III.   THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST WEIGH IN FAVOR OF DENYING PLAINTIFF'S MOTIONS.

The final two factors in considering a preliminary injunction motion, which are merged when the Government is the non-movant, are the harm to the opposing party and weighing the public interest." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (observing that the Government's "harm and the public

interest are one and the same, because the government's interest *is* the public interest"). In weighing the equities, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987).

The Government will "suffer[] a form of irreparable injury" if it "is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (citation omitted). That is particularly true here where DOL has concluded, after considering tens of thousands of public comments, that the 2022 Rule will (1) "bolster worker health and safety protections[;]" (2) improve the "process of submitting and reviewing H-2A applications, which will reduce workforce instability; and (3) . . . streamline the H-2A application process and reduce delays." *See* 87 Fed. Reg. at 61,663. *See Nat'l Propane Gas Ass'n v. DHS*, 534 F. Supp. 2d 16, 20 (D.D.C. 2008) ("[T]here is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct an agency to develop and enforce."). Indeed, granting Plaintiff their desired TRO—which is not even limited to Plaintiff's purportedly irreparably injured members, *see infra* at Part IV—would require DOL to process H-2A applications based on a process that the agency believes is inadequate to implement Congressional intent. Further, the regulatory process at issue began in July 2019 with a Notice of Proposed Rulemaking that, as Plaintiffs recognize, attracted substantial attention and a significant number of comments. That process culminated in a duly promulgated rule more than three years later. Upending that process would cause irreparable injury that outweighs Plaintiff's asserted injuries, which again are speculative and/or not actionable. Accordingly, the balance of equities and public interest make a temporary restraining order inappropriate.

**IV.   THE COURT SHOULD NOT TEMPORARILY RESTRAIN DEFENDANTS FROM ENFORCING THE CHALLENGED RULE AGAINST NONPARTIES OR UNHARMED UNIDENTIFIED MEMBERS OF PLAINTIFF'S ORGANIZATION.**

In the event that the Court agrees with Plaintiff and issues a temporary restraining order, it should be limited in scope to identifiable members of Plaintiff's organization who have

demonstrated concrete and particularized imminent injury due to the challenged rule's enforcement.  As the Supreme Court has confirmed, any "remedy" ordered by a federal court must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established"; a court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it"; and "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1921, 1933-34 (2018).  Equitable principles similarly require that an injunction 'be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted); *see also DHS v. New York*, 140 S. Ct. 599, 600 (Mem) (Gorsuch, J., concurring) (criticizing "increasingly common practice of trial courts ordering relief that transcends the cases before them" as "flaw[ed]" because "they direct how the defendant must act toward persons who are not parties to the case"); *Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring) (noting that nationwide injunctions "are legally and historically dubious").  These principles apply with the greatest force to a temporary restraining order, an equitable tool designed merely to "preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction[.]"  Charles Alan Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (3d ed.), Westlaw (database updated April 2022).

Here, Plaintiff fails to show that a nationwide TRO is necessary to redress the alleged injuries of its member or members.  An injunction appropriately limited to identifiable injured members would suffice to redress any injury that they are purportedly suffering.  Plaintiff offers no legitimate reason how extending a TRO to others is consistent with Article III.  *See Gill*, 138 S. Ct. at 1930-31 (in constitutional vote-dilution challenged brought by individual voter, Article III required limiting remedy to "revising only such districts as are necessary to reshape the voter's district" rather than "restruction all of the State's legislative districts"); *see also Doe 2 v. Shanahan*, 917 F.3d 694, 739-40 (D.C. Cir. 2019) (citing *Gill* in dissolving nationwide injunction).

Nor does the APA provide any basis for a nationwide injunction.  *See, e.g.*, *California v. Azar*, 911 F.3d 558, 582-84 (9th Cir. 2018) (vacating nationwide scope of injunction in APA

challenge).  A court "do[es] not lightly assume that Congress has intended to depart from established principles" regarding equitable discretion, *Weinberger v. Romero-barcelo*, 456 U.S. 305, 313 (1982), and the APA's general instruction that unlawful agency action "shall" be "set aside," 5 U.S.C. § 706(2), is insufficient to mandate such a departure.  Indeed, the Supreme Court held that not even a provision directing that an injunction "shall be granted" with respect to a threatened or completed violation of a particular statute was sufficient to displace traditional principles of equitable discretion, *Hecht Co. v. Bowles*, 321 U.S. 321, 328-30 (1944).  Congress is presumed to have been aware of that holding when it enacted the APA two years later.  In fact, the APA expressly confirms that, absent a special review statute, "[t]he form of proceeding for judicial review" is simply the traditional "form[s] of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction," 5 U.S.C. § 703, and that the statutory right of review does not affect "the power or duty of the court to . . . deny relief on any . . . appropriate legal or equitable ground," *id.* § 702(1).  The Supreme Court therefore has confirmed that, even in an APA case, "equitable defenses may be interposed." *Abbott Labs. v. Gardner*, 387 U.S. 136, 155 (1967).  Accordingly, the Court should construe the "set aside" language in § 706(2) as applying only to the named Plaintiff's injured members, especially as no federal court had issued a nationwide injunction before Congress's enactment of the APA in 1946, nor would do so for more than fifteen years thereafter, *see Hawaii*, 138 S. Ct. at 2426 (Thomas, J., concurring).  That is particularly the case at the preliminary injunction stage, which is necessarily based on a showing that the movant—and not non-parties—will suffer irreparable injury without an injunction.  *Cf. Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (affirming nationwide injunction issued after *final* judgment).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a temporary restraining order.  For the same reasons, and without further briefing, the Court should deny Plaintiff's motion for a preliminary injunction.

Dated:  November 29, 2022                Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Branch Director

*/s/ Liam C. Holland*
MICHAEL J. GAFFNEY
LIAM C. HOLLAND
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington, D.C. 20005
Tel.: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Attorneys for Defendants*