**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| NATIONAL COUNCIL OF | : | | |
| AGRICULTURAL EMPLOYERS, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-3569 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 26, 27 |
| | : | | |
| UNITED STATES DEPARTMENT | : | | |
| OF LABOR, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**<u>MEMORANDUM OPINION</u>**

**DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff National Council of Agricultural Employers ("NCAE") brings this suit against the Department of Labor ("DOL"); the Office of the Federal Register ("OFR"); the Employment and Training Administration of DOL; the Wage and Hour Division of DOL; Julie Su, in her official capacity as Acting Secretary of Labor[1]; Oliver Potts, in his official capacity as Director of OFR; Brent Parton, in his official capacity as Principal Deputy Assistant Secretary of the Employment and Training Administration; and Jessica Looman, in her official capacity as Administrator of the Wage and Hour Division (collectively, "Defendants"), alleging violations of the Administrative Procedure Act ("APA") in connection with the promulgation of a DOL rule. NCAE alleges that, during the last few days of the Trump administration, DOL issued a final rule

---

[1] United States Acting Secretary of Labor Julie Su is automatically substituted for Marty Walsh pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

concerning the H-2A visa program.  Before the rule's publication in the Federal Register,

however—and following the inauguration of President Biden—DOL withdrew the rule.  Then, in

2022, DOL issued a revised final rule concerning the H-2A program.  NCAE alleges that various

aspects of this chain of events—the withdrawal and related failure to publish the rule in 2021,

followed by the promulgation of the rule in 2022—violated the APA by depriving it and its

members of notice and the ability to comment on the promulgation of the final version of the

rule.  Defendants disagree; they contend that the rule never became final in 2021, was validly

withdrawn from publication, and was properly promulgated as a final rule in 2022.  The parties

now cross-move for summary judgment.  For the reasons discussed below, NCAE's motion is

denied and Defendants' cross-motion is granted.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

The H-2A visa program—created by the Immigration and Nationality Act of 1952

("INA") and amended by the Immigration Reform and Control Act of 1986—permits employers

(referred to as labor contractors) to hire foreign workers to perform temporary agricultural work

in the United States.  *See* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a), 1184(c)(1), 1188.  An employer

seeking to hire H-2A foreign workers must first seek certification from DOL that (1) "there are

not sufficient workers who are able, willing, and qualified, and who will be available at the time

and place needed, to perform the labor or services involved" and (2) the employment of a foreign

worker "in such labor or services will not adversely affect the wages and working conditions of

workers in the United States [who are] similarly employed."  *Id.* § 1188(a)(1).  After DOL

certifies an employer's petition, the employer can "petition the Department of Homeland

Security to designate foreign workers as H-2A workers." *Overdevest Nurseries v. Walsh*, 2 F.4th 977, 980 (D.C. Cir. 2021).

Congress has delegated authority to promulgate regulations governing the parameters of the H-2A program to the Secretary of Labor. *Id.* Prior to 2022, many of the regulations governing the H-2A program dated to 2010—the last time that DOL conducted a major rulemaking relating to that program. *See Mendoza v. Perez*, 754 F.3d 1002, 1008 (D.C. Cir. 2014). In 2018, however, DOL (along with other agencies tasked with responsibility for administering or facilitating the H-2A program) announced an effort to "modernize the H-2A visa program by clarifying and improving the regulations governing the program." *See* Am. Declaration of Michael Marsh ("Marsh Decl."), Ex. A, ECF No. 12-2. In furtherance of that effort, on July 26, 2019, DOL issued a noticed of proposed rulemaking (the "2019 NPRM") in which the agency announced its formal proposal to "amend [DOL's] regulations regarding the certification of temporary employment of nonimmigrant workers employed in temporary or seasonal agricultural employment." *See* Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 84 Fed. Reg. 36,168, 36,168 (proposed July 26, 2019). DOL clarified that the proposed rulemaking would, among other things, "[a]mend[] . . . the current regulations" by "modernizing the H-2A program and eliminating inefficiencies." *Id.* In announcing the proposed rule, DOL opened a 60-day public comment period during which "[i]nterested persons [we]re invited to submit written comments." *Id.*

Though the 2019 NPRM was sweeping in scope, two categories of proposed amendments to the 2010 regulatory regime are of particular relevance here. The first grouping of amendments concerned changes to the methodology used to determine prevailing wages, one of the applicable wage sources in the H-2A program. *See id.* at 36,171. As discussed above, before "[a] petition

to import an alien as an H-2A worker" may be approved, DOL must certify that employment of the foreign worker "will not adversely affect the wages and working conditions of workers in the United States [who are] similarly employed."  8 U.S.C. § 1188(a)(1).  One of the ways DOL ensures compliance with this requirement is by requiring employers to "offer, advertise in [their] recruitment, and pay a wage that is at least the highest of" the adverse effect wage rate ("AEWR"), the prevailing wage, the agreed-upon collective bargaining wage, the federal minimum wage, or the state minimum wage.  *See* 20 C.F.R. §§ 655.120(a), 655.122(l).  At the time, DOL determined the prevailing wage using a methodology that "ha[d] not been updated since 1981."  *See* Temporary Agricultural Employment, 84 Fed. Reg. at 36,184.  In the 2019 NPRM, DOL "propose[d] to modernize" that methodology, and outlined myriad, detailed ways in which it would do so.  *See id.* at 36,171, 36,179–88.

The second relevant category of amendments delineated in the 2019 NRPM concerned regulations requiring H-2A employers to submit "proof of [their] ability to discharge [their] financial obligations in the form of a surety bond."  *Id.* at 36,203.  As DOL explained, the surety bond requirement enables the agency to ensure that H-2A employers, "who may be transient and undercapitalized, can meet their payroll and other program obligations, thereby preventing program abuse."  *Id.*  In the event that DOL finds that an employer has violated its obligations, DOL "may make a claim to the surety for payment of wages and benefits owed to H-2A workers, workers in corresponding employment, and U.S. workers improperly rejected from employment, laid off, or displaced, up to the face amount of the bond."  *Id.*  In 2019, employers were required to obtain bonds ranging from "$5,000 to $75,000 depending on the number of H-2A workers employed."  *Id.*; *see* 29 C.F.R. § 501.9(c) (2019).  Those amounts had remained unchanged since 2010.  *See* Temporary Agricultural Employment, 84 Fed. Reg. at 36,204.  Among other things,

the 2019 NPRM proposed increasing the bond amounts to account for "annual increases in the

AEWR," and also proposed to increase the bond amounts for H-2A certifications covering more

than 150 workers.  *Id.* at 36,203–05.

Ultimately, DOL received over 83,000 comments on the proposed rule changes.  *See*

Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 87 Fed. Reg.

61,660, 61,664 (Oct. 12, 2022).  These comments included a 27-page letter submitted by NCAE.

*See* Nat'l Council of Agric. Employers, Marsh, Michael, Comment Letter on Proposed Rule

Regarding Temporary Agricultural Employment of H-2A Nonimmigrants in the United States

(Sept. 24, 2019), https://www.regulations.gov/comment/ETA-2019-0007-0354.

After President Biden won the 2020 election but before he took office, DOL took steps

toward promulgating a final rule, which, for ease of reference, the Court will refer to as the

"2021 Rule."[2]  On the morning of January 11, 2021, DOL emailed OFR a Word document

entitled "ETA H-2A 2020 final rule 1_8_2021.docx."  Mem. Supp. Pl.'s Mot. Summ. J., Ex. 1,

Joint Stip. Undisputed Facts ("JSUF") ¶ 1, ECF No. 26-2.  After OFR informed DOL that the

document was missing a necessary signature, DOL submitted an updated Word document

(entitled "H-2A 2020 final rule 1 8 2021.docx") later that afternoon.  *Id.* ¶¶ 2–3.  The later-

submitted document was signed by both the then-Assistant Secretary for the Employment and

Training Administration and the then-Administrator of the Wage and Hour Division.  *Id.* ¶ 3.

That same day, DOL also sent OFR a "special handling" letter.  *See* JSUF, Ex. A.  The letter

requested that OFR make the 2021 Rule "available for immediate filing on January 14, 2021"

---

[2] The shorthand names "2021 Rule" and "2022 Rule" are used in this opinion strictly for
convenience and should be interpreted as fully consistent with the Court's substantive analysis of
the finality of those rules for purposes of the APA.

and further requested that OFR schedule the 2021 Rule for "emergency publication on January 15, 2021." *Id.*

Days passed without action.  Then, on January 14, DOL sent a follow-up email to OFR to inquire into the "status" of the "review, markup and/or scheduling" of the 2021 Rule.  *See* JSUF, Ex. B.  DOL's email reiterated that the Secretary of Labor wanted the 2021 Rule to be published "on or before January 19." *Id.*  Minutes later, an OFR employee responded that, due to the "relentless backlog of regulatory documents," an "emergency editor" had not yet been able to address DOL's submission. *Id.*  Shortly thereafter, another OFR employee replied to inform DOL that, "[g]iven [the] backlog," OFR would "not be able to file immediately or publish by the 19th." *Id.*

Following that news, DOL took matters into its own hands.  On January 15, DOL held a stakeholder call "regarding significant rulemaking on the H-2A Visa program." *See* Marsh Decl., Ex. B.  DOL also issued a press release stating that it had, that day, "announced a final rule that modernizes the H-2A Temporary Agricultural Labor Certification Program." *See* Marsh Decl., Ex. C.  The press release clarified that DOL would "publish the final rule in the Federal Register at a later date." *Id.*  In the meantime, DOL invited the public to "[r]ead the final rule," through a hyperlink contained in the alert. *Id.*  The version of the rule accessible at the hyperlink contained the following disclaimer at the top of each page:

> **Disclaimer:** This regulation has been submitted to the Office of the Federal Register (OFR) for publication, and is currently pending placement on public inspection at the OFR and publication in the Federal Register. This version of the regulation may vary slightly from the published document if minor technical or formatting changes are made during the OFR review process. Only the version published in the Federal Register is the official regulation.

*See* Marsh Decl., Ex D; *see also Temporary Agricultural Employment of H-2A Nonimmigrants in the United States* (Jan. 20, 2021), https://perma.cc/EZK4- JV35.  NCAE was among those who

received word of DOL's newly announced final rule and sent a notification to its members to that effect.  *See* Marsh Decl., Exs. E, F.

President Biden was sworn into office on January 20, 2021.  True to its word, OFR had neither published the 2021 Rule in the Federal Register nor made it available for public inspection prior to the new president's inauguration.  That being so, shortly after President Biden was duly sworn, DOL "withdrew" the 2021 Rule from OFR "prior to its publication."  *See* Marsh Decl., Ex. H.  DOL explained that it was withdrawing the rule "for the purpose of reviewing issues of law, fact, and policy raised by the rule."  *Id.*  DOL further clarified that, in light of the withdrawal, the 2021 Rule "[would] not take effect."  *Id.*; *see also* Announcement, U.S. Department of Labor Withdraws Forthcoming H-2A Temporary Agricultural Program Rule for Review (Jan. 20, 2021), https://perma.cc/CTW2-VH2U.

Following DOL's withdrawal of the rule, little of note happened until October of 2022. The parties agree that DOL did not seek further public comment on the proposed rule changes during the intervening period.  Then, on October 12, 2022, DOL published a final rule—which the Court will refer to as the "2022 Rule"—in the Federal Register.  *See* Temporary Agricultural Employment of H-2A Nonimmigrants in the United States, 87 Fed. Reg. 61,660.  Consistent with the 2019 NPRM, the 2022 Rule was comprehensive in scope.  Also consistent with the 2019 NPRM, the 2022 Rule "revis[ed] the standards and procedures for determining the prevailing wage rate," *id.* at 61,660; *see also id.* at 61,796–97 (codified at 20 C.F.R. § 655.120(c)), and amended the surety bond requirements, *see id.* at 61,803–04 (codified at 20 C.F.R. § 655.132). The 2022 Rule went into effect on November 14, 2022.  *See id.* at 61,660.

### B. Procedural Background

Following the enactment of the 2022 Rule, NCAE filed suit in this court.  In its

complaint, NCAE alleged that DOL violated the APA by withdrawing the 2021 Rule without

notice-and-comment, Compl. ¶¶ 81–88; that OFR violated the Federal Register Act, the APA,

and OFR's own regulations by failing to post the 2021 Rule for public inspection and publish the

2021 Rule in the Federal Register, *id.* ¶¶ 89–92; and that DOL violated the APA by

promulgating the 2022 Rule without notice-and-comment, *id.* ¶ 80.  NCAE further complained

that DOL violated the APA and certain provisions of the INA by increasing the surety bond

requirements, *id.* ¶¶ 93–96; and that DOL violated the APA by amending the methodology for

determining the prevailing wage, *id.* ¶¶ 100–02.

Two days after filing its complaint, NCAE filed a motion for a temporary restraining

order and preliminary injunction.  *See* ECF No. 4.  The Court denied NCAE's motion but

granted NCAE leave to file a renewed motion for preliminary injunction at a later date.  *See*

Minute Entry (Nov. 29, 2022).  NCAE filed its renewed motion on December 23, 2022.  *See*

ECF No. 12.  The Court denied NCAE's motion on February 16, 2023.  *See* Mem. Op., ECF No.

21.  As relevant here, the Court first held that NCAE lacked standing to "direct[ly] challenge"

DOL's withdrawal of the 2021 Rule.  *Id.* at 8.  That was because NCAE "fail[ed] to establish that

any of its members suffered an injury in fact from the withdrawal of the 2021 Rule."  *Id.* at 9.

Specifically, the Court found that NCAE did not allege that withdrawal of the 2021 Rule caused

its members "economic harm."  *Id.*  To the contrary, NCAE did not deny that its "members were

*better off*" from an economic standpoint during "the nearly two years between the withdrawal of

the 2021 [Rule] and the promulgation of the 2022 [Rule]."  *Id.* at 10 (quotation omitted).

Although the Court held that NCAE did not have standing to directly contest the withdrawal of the 2021 Rule, it found that NCAE did have standing to challenge DOL's promulgation of the 2022 Rule. *Id.* at 12. The Court acknowledged the close overlap between the "question of whether the 2021 Rule was unlawfully withdrawn" and the question of "whether the 2022 Rule was unlawfully promulgated," but it explained that, despite the close overlap, NCAE had "maintained them as distinct claims from the beginning." *Id.* After concluding that NCAE had standing to pursue its challenge to the 2022 Rule's promulgation, the Court held that NCAE had not demonstrated that it was entitled to a preliminary injunction. *Id.* at 22; *see id.* at 14–22 (explaining that NCAE had not demonstrated irreparable harm or a likelihood of success on the merits).

NCAE now moves for summary judgment. *See generally* Mem. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 26-1. In its summary judgment motion, NCAE argues that DOL's promulgation of the 2022 Rule was unlawful because DOL never provided NCAE notice or the opportunity to comment. *See id.* at 10–11, 21–22. NCAE also argues that OFR violated both the Federal Register Act and OFR's own regulations when it failed to post the 2021 Rule for public inspection on January 15, 2021. *See id.* at 22–23.

Defendants cross-move for summary judgment. *See generally* Defs.' Mem. P&A Supp. Cross-Mot. Summ. J. and Opp'n Pl.'s Mot. Summ. J. ("Defs.' Cross-Mot."), ECF No. 27-1. Defendants' cross-motion argues that NCAE lacks standing to challenge DOL's withdrawal of the 2021 Rule, OFR's failure to post the 2021 Rule, and DOL's promulgation of many aspects of the 2022 Rule. *See id.* at 15–19. On the merits, Defendants contend that the 2021 Rule was validly withdrawn and that, therefore, the 2022 Rule was properly promulgated following the notice-and-comment period—that is, the notice-and-comment period that followed the 2019

NPRM.  *See id.* at 20–29.  The parties' motions are ripe for review.  *See* Mem. Opp'n Defs.'

Cross-Mot. Summ. J. and Reply Supp. Pl.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 30; Defs.'

Reply Supp. Cross-Mot. Summ. J. ("Defs.' Reply"), ECF No. 32.

### III.  LEGAL STANDARD

A court must grant summary judgment when the pleadings and evidence show that "there

is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  In cases involving review of agency action under the

APA, however, Rule 56 "does not apply because of the limited role of a court in reviewing the

administrative record."  *Select Specialty Hosp.-Akron, LLC v. Sebelius*, 820 F. Supp. 2d 13, 21

(D.D.C. 2011) (citations omitted).  In this context, summary judgment instead "serves as a

mechanism for deciding, as a matter of law, whether the agency action is supported by the

administrative record and is otherwise consistent with the APA standard of review."  *Id.*

Under the APA, a court must "hold unlawful and set aside agency action, findings, and

conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or

"without observance of procedure required by law," *id.* § 706(2)(D).  That said, the scope of the

court's review is narrow, and a court must not "substitute its judgment for that of the agency."

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Indeed, an agency's decision is presumed to be valid.  *See Am. Radio Relay League, Inc. v.

F.C.C.*, 617 F.2d 875, 879 (D.C. Cir. 1980).

## IV.  ANALYSIS

### A.  Standing

Before addressing the merits of NCAE's claims, the Court must assess a number of challenges raised by Defendants regarding NCAE's standing to bring this lawsuit.  *See Grand Council of Crees (of Quebec) v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000) ("Article III standing must be established before any decision is made on the merits.").  In particular, Defendants argue that NCAE lacks standing to contest (1) DOL's January 2021 withdrawal of the 2021 Rule, *see* Defs.' Cross-Mot. at 15–16; (2) OFR's failure to publish the 2021 Rule, *see id.* at 16–17; and (3) the promulgation of any provisions contained in the 2022 Rule other than those relating to the "surety bond [requirements] or prevailing wage methodology," *see id.* at 18–19.[3]  The Court will address these challenges in turn.

#### 1.  NCAE Lacks Standing to Challenge DOL's Withdrawal of the 2021 Rule

First, Defendants argue that NCAE has not shown that either it or its members "have standing to press any challenge to the January 2021 withdrawal of the" 2021 Rule.  *Id.* at 15.

---

[3] Defendants also argue that NCAE lacks standing to challenge the substance of the "prevailing wage survey methodology requirements" enacted in the 2022 Rule.  *See* Defs.' Cross-Mot. at 17–18.  In Count 6 of its complaint, NCAE alleged that DOL acted arbitrarily and capriciously by "relax[ing] . . . the prevailing wage survey requirements."  Compl. ¶¶ 100–02.  However, NCAE's summary judgment motion does not address this claim at all, *see generally* Pl.'s Mot., and its opposition to Defendants' cross-motion disclaims any "need" to address "NCAE's substantive challenges" to the 2022 Rule given NCAE's belief that "the procedural issues" with that rule fully dispose of this case, *see* Pl.'s Opp'n at 21.  By declining to pursue its substantive challenge to the 2022 Rule in its summary judgment briefing, NCAE has "abandoned" any such claim.  *See Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 9 n.1 (D.D.C. 2016); *New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 153 n.10 (D.D.C. 2016); *Styrene Info. & Rsch. Ctr., Inc. v. Sebelius*, 944 F. Supp. 2d 71, 83 (D.D.C. 2013); *Noble Energy, Inc. v. Salazar*, 691 F. Supp. 2d 14, 23 n.6 (D.D.C. 2010); *accord Aliotta v. Bair*, 614 F.3d 556, 562 (D.C. Cir. 2010) ("[P]laintiffs cannot raise on appeal claims they allege in their complaint but abandon at the summary judgment stage."); *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived.").  As a result, the Court need not analyze NCAE's standing to bring that claim.

Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), and therefore is "a necessary 'predicate to any exercise of [a federal court's] jurisdiction,'" *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.D.C. 2012) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)). Accordingly, "[e]very plaintiff in federal court bears the burden of establishing the three elements that make up the 'irreducible constitutional minimum' of Article III standing: injury-in-fact, causation, and redressability." *Id.* at 1362 (quoting *Lujan*, 504 U.S. at 560). Standing is "not dispensed in gross"; rather, Plaintiffs must show standing as to each claim. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

An organization like NCAE may establish standing in multiple ways: "on its own behalf, on behalf of its members[,] or both." *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011). To the extent that NCAE seeks to establish standing on behalf of its members, *see* Mem. Op. at 9 (explaining that "NCAE asserts associational standing" to contest DOL's withdrawal of the 2021 Rule), it must show that "(1) at least one of its members would have standing to sue in his own right, (2) the interests [NCAE] seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit." *Sierra Club v. E.P.A.*, 292 F.3d 895, 898 (D.C. Cir. 2002). To satisfy the first requirement, the organizational plaintiff must show that "(1) at least one of its members has suffered an 'injury-in-fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Sierra Club v. FERC*, 827 F.3d 59, 65 (D.C. Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167,

180–81 (2000)). The plaintiff "'bears the burden of establishing' all three elements of standing."

*Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 18

(D.D.C. 2020) (quoting *Lujan*, 504 U.S. at 561). That said, "the manner and degree of evidence

required" for a plaintiff to sustain its burden varies according to the "stage[] of the litigation."

*Lujan*, 504 U.S. at 561. At summary judgment, the plaintiff may not rest on "mere allegations,"

but rather "must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of

the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)).

As noted above, the Court has previously concluded that NCAE lacks standing to directly

challenge DOL's January 2021 withdrawal of the 2021 Rule. *See* Mem. Op. at 9–11. That is

because NCAE failed to show "that any of its members suffered an injury in fact from the

withdrawal of the 2021 Rule." *Id.* at 9. Indeed, NCAE's own declarations established that its

"members were *better off* for the nearly two years between the withdrawal of the 2021 [Rule]

and the promulgation of the 2022 [Rule] because the increased surety bond requirements of

which [NCAE] complains would have applied much earlier." *Id.* at 10 (internal quotation marks

omitted).

NCAE does not presently appear to contest any aspect of the Court's previous ruling

regarding the organization's standing to challenge DOL's withdrawal of the 2021 Rule. Instead,

NCAE asserts only that it has standing to (1) seek declaratory relief in relation to OFR's failure

to post the 2021 Rule for public inspection and (2) challenge Defendant's unlawful promulgation

of the 2022 Rule, *see* Pl.'s Opp'n at 2–9—arguments to which the Court will turn shortly. That

being so, the Court simply reiterates what it held before: because NCAE has not shown that its

members suffered an injury-in-fact from DOL's withdrawal of the 2021 Rule, "the Court lacks

jurisdiction to consider [NCAE's] independent claim that the 2021 Rule was unlawfully

withdrawn." Mem. Op. at 11.

### 2. NCAE Lacks Standing to Challenge OFR's Failure to Publish the 2021 Rule

Defendants next argue that NCAE lacks standing to seek relief relating to OFR's failure

to post the 2021 Rule for public inspection and Federal Register publication. *See* Defs.' Cross-

Mot. at 15–17. Their argument proceeds in two parts. First, Defendants argue that NCAE has

not shown that its members suffered an injury stemming from OFR's failure to publish the 2021

Rule. *Id.* at 15–16. Second, Defendants argue that, even if NCAE or its members had suffered

an injury, any such injury is not redressable. *Id.* at 16–17.

Defendants' argument that NCAE has failed to show that its members were injured by

OFR's failure to publish the 2021 Rule is closely related to their argument for why NCAE's

members failed to establish an injury flowing from DOL's withdrawal of the same. Namely,

Defendants argue that, had OFR published the 2021 Rule, "the surety bond and prevailing wage

provisions that [NCAE] challenges would have taken effect years earlier." *Id.* at 16. NCAE

does not meaningfully contend otherwise. *See* Pl.'s Opp'n at 6–9 (arguing that "NCAE has

demonstrated standing to request declaratory relief from OFR" without addressing this aspect of

Defendants' argument (cleaned up)). Thus, the Court finds that NCAE's members were better

off (from an economic standpoint) during the two years between OFR's failure to publish the

2021 Rule and DOL's promulgation of the 2022 Rule. *See* Mem. Op. at 10.

Instead of contesting Defendants' argument that NCAE's members were not harmed by

OFR's failure-to-publish, NCAE contends that it itself is "aggrieved" by OFR's failure to publish

the 2021 Rule because NCAE "prefers" the 2021 Rule to the 2022 Rule. Pl.'s Opp'n at 7. As

best the Court can tell, NCAE appears to be making an argument that it has standing to pursue a

claim against OFR on its own behalf, regardless of any harm that may or may not have accrued to its members. *See id.* ("*NCAE* is aggrieved by OFR's failure to timely put on public inspection and publish the 2021 Final Rule." (emphasis added)).  But NCAE does not cite—and the Court has not found—any authority for the proposition that an organization's mere preference for one rule over another is sufficient to satisfy the injury-in-fact requirement of Article III standing.

NCAE separately suggests that it suffered an injury based on OFR's failure to publish the 2021 Rule because, absent the failure-to-publish, there likely would have been no need for NCAE to bring this lawsuit.  *See id.* ("[B]ut for OFR's failure to follow its rules and at least put the 2021 Final Rule on public inspection this very dispute would probably not exist . . . ."); *see also* Pl.'s Mot. at 22 (same).  This line of argument is unavailing for a number of reasons.  First, NCAE's purported injury is purely hypothetical, and it is black letter law that an injury that is "'conjectural or hypothetical' . . . is insufficient to support standing."  *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of the Treasury*, 21 F. Supp. 3d 25, 32 (D.D.C. 2014) (quoting *Lujan*, 504 U.S. at 560).  Moreover, NCAE does not cite any *evidence* to support its claim that it likely would not have brought suit had OFR published the 2021 Rule.  NCAE's unadorned claim is insufficient, at summary judgment, to prove standing.  *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (explaining that "[a]t the summary judgment stage of the proceedings, [a plaintiff] 'can no longer rest on mere allegations, but must set forth by affidavit or other evidence specific facts,'" demonstrating its standing to sue (cleaned up) (quoting *Lujan*, 504 U.S. at 561)).  And finally, even if NCAE's purported injury was both based in fact (as opposed to conjecture) and supported by evidence, the purported injury is not the type of injury that would give it standing to sue.  To the contrary, it is the type of injury that the D.C. Circuit has held to be insufficient to confer Article III standing in similar circumstances.

*See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (explaining that "an organization's use of resources for litigation . . . is not sufficient to give rise to an Article III injury"); *Equal Rts. Ctr.*, 633 F.3d at 1138 (same); *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006) ("[A]n organization is not injured by expending resources to challenge the regulation itself . . . .").

In short, NCAE has not demonstrated—with evidence or otherwise—that it was injured by OFR's failure to post or publish the 2021 Rule. Accordingly, NCAE does not have standing to challenge OFR's failure to publish the 2021 Rule, and the Court therefore lacks subject matter jurisdiction to consider that claim.[4]

### 3. NCAE Has Standing to Challenge the Promulgation of the 2022 Rule

The Defendants' final standing challenge concerns DOL's promulgation of the 2022 Rule. Defendants argue that, to the extent NCAE has standing to challenge DOL's promulgation of the 2022 Rule *at all*, NCAE only has standing to challenge the promulgation without notice-and-comment of certain, narrow aspects of the rule—specifically, provisions of the rule relating to the increased surety bond requirements and the prevailing wage methodology. *See* Defs.' Cross-Mot. at 17–19. Defendants' argument is premised on the contention that "[e]ach portion of the 2022 Rule is severable," and that NCAE has not demonstrated that either it or its members have suffered an injury based on any of the other, severable provisions. *Id.* at 18. The upshot,

---

[4] Because the Court concludes that NCAE has not shown that it suffered an injury-in-fact stemming from OFR's failure-to-publish, the Court need not and does not address Defendants' alternate argument that any alleged harm is not redressable. *See* Defs.' Cross-Mot. at 16–17; *see also, e.g.*, *Salazar v. District of Columbia*, 75 F. Supp. 3d 139, 143 n.3 (D.D.C. 2014) (declining to consider other elements of standing analysis where plaintiff had failed to demonstrate redressability). In a similar vein, because the Court holds that NCAE lacks standing to challenge *both* DOL's withdrawal of the 2021 Rule *and* OFR's failure to publish the same, the Court will not address Defendants' contention that NCAE's challenges to those events "are barred by the equitable doctrine of laches." *See* Defs.' Cross-Mot. at 19–20.

according to Defendants, is that NCAE lacks "standing to challenge (or to seek relief addressing) DOL's promulgation of [any] other provisions" of the 2022 Rule besides those for which it has demonstrated a concrete injury. *Id.*

For its part, NCAE argues—as it did at the preliminary injunction stage—that it has standing to seek redress for the alleged deprivation of NCAE's and its members' "'procedural right' to notice and the opportunity to comment on the 2022 Rule." *See* Mem. Op. at 12; Pl.'s Opp'n at 2 ("NCAE has standing to pursue its claim that the 2022 Rule was unlawfully promulgated."); *see also* Pl.'s Mot. at 21 ("New notice and comment procedures were required to promulgate any rule that was not the 2021 Rule."). When, as here, a plaintiff seeks to vindicate a procedural right, such as having been unlawfully denied the opportunity to comment on a proposed rule, the plaintiff must show that the procedural injury is "tethered to some concrete interest adversely affected by the procedural deprivation." *WildEarth Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing."); *see also Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 38 (D.D.C. 2020). A plaintiff asserting such a violation need not show "that but for the procedural violation the agency action would have been different." *Mendoza*, 754 F.3d at 1010. Nor is a plaintiff required to "establish that correcting the procedural violation would necessarily alter the final effect of the agency's action on the plaintiff['s] interest." *Id.* Once a plaintiff asserting a procedural injury has "clear[ed] [the] hurdle" of demonstrating a concrete, particularized injury, "the normal standards for immediacy and redressability are relaxed." *Cap. Area Immigrants' Rts. Coal.*, 471 F. Supp. 3d at 38 (quoting *Mendoza*, 754 F.3d at 1010).

The Court has already found that NCAE's "members' concrete interests were adversely affected by the procedural injury alleged." Mem. Op. at 13. As previously detailed, NCAE's declarations supportably establish that the 2022 Rule's revisions to the H-2A program's surety bond requirements increase the compliance costs faced by its members. *See* Mem. Op. at 13–14. Those declarations show, for example, that one of the organization's members, Fresh Harvest, is likely to incur annual expense increases of at least $883,575 as a result of the surety bond increases. *See* Marsh Decl. ¶ 27. They further show that another member has seen its costs increase by almost $3,000 as a result of changes to the surety bond requirements enacted in the 2022 Rule. *See id.* at ¶ 29. These examples demonstrate that NCAE's members suffered a concrete injury as a result of the 2022 Rule's enactment.[5] *See Silver v. Internal Revenue Serv.*, No. 20-cv-1544, 2022 WL 16744921, at *3 (D.D.C. Nov. 7, 2022) ("Increased compliance costs as a result of a procedurally improper rule are sufficient to show such an injury.").

Defendants seemingly concede that NCAE's members were injured by the 2022 Rule's surety bond provisions, *see* Defs.' Cross-Mot. at 17, and do not argue that NCAE lacks standing to challenge the promulgation of the surety bond provisions in the 2022 Rule, *see id.* at 18–19. But they argue that that is as far as it goes. In other words, they argue that NCAE's standing to challenge the promulgation of the 2022 Rule extends only to the rule's surety bond provisions

---

[5] The Court's earlier opinion also explained that NCAE has satisfied the other requirements necessary for it to assert standing to challenge the promulgation of the 2022 Rule on its members' behalf because (1) NCAE's "advocacy concerning significant changes to the H-2A program is germane to [its] purpose as a national trade association focusing on agricultural labor issues from the agricultural employer's viewpoint," and (2) "this suit does not require the participation of any individual [NCAE] member." Mem. Op. at 14 (internal quotation marks omitted); *see Sierra Club*, 292 F.3d at 898 (explaining that associational standing inquiry requires plaintiff to prove that "the interests the association seeks to protect are germane to its purpose, and [that] neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit").

(and perhaps the wage methodology provisions as well).  *See id.* at 18; *see also Whitman-Walker Clinic, Inc.*, 485 F. Supp. 3d at 24–34.

Whatever the merits of Defendants' argument, the Court need not reach it here.  That is because, as discussed above, both parties agree—and NCAE has shown—that NCAE has standing to assert its claim that the 2022 Rule was unlawfully promulgated without notice-and-comment at least insofar as the surety bond requirements therein are concerned.  As the parties have presented the issue, answering the question of whether specific provisions of the 2022 Rule were unlawfully promulgated without notice-and-comment requires the Court to analyze whether the 2022 Rule as a whole was unlawfully promulgated without notice-and-comment.  And because the Court concludes that the 2022 Rule *was* properly promulgated, *see infra* Part IV.B, it ultimately makes no difference whether NCAE has standing to seek vacatur of the entire 2022 Rule or just those portions of the rule as to which NCAE has shown concrete injury.  *Cf. In re Idaho Conservation League*, 811 F.3d 502, 509 (D.C. Cir. 2016) ("If one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." (internal alterations omitted) (quoting *Ry. Labor Execs. Ass'n v. United States*, 987 F.2d 806, 810 (D.C. Cir. 1993)).  Accordingly, assured of its jurisdiction to address—at the very least—whether specific provisions of the 2022 Rule were unlawfully promulgated, the Court will proceed to the merits.

## B.  Merits

Having resolved the threshold questions of standing, the Court turns to the merits.  On the merits, NCAE argues that DOL deprived it of the procedural right to notice of, and the opportunity to comment on, the 2022 Rule.  *See* Pl.'s Mot. at 21–22 ("New notice and comment procedures were required to promulgate any rule that was not the 2021 Rule."); *see also* Pl.'s

Opp'n at 4 ("It is Defendants' failure to follow the APA in the promulgation of the 2022 Rule that has injured NCAE by depriving it of its bedrock procedural right to comment thereon."). Defendants disagree. They argue that DOL satisfied the APA's notice-and-comment requirement by posting the 2019 NPRM, soliciting comments from the public, duly considering those comments, and then issuing a final rule in 2022 that was a logical outgrowth of the 2019 NPRM. *See* Defs.' Cross-Mot. at 21. The Court agrees with Defendants.

"To foster public participation and facilitate reasoned decisionmaking, 'the Administrative Procedure Act requires agencies to afford notice of a proposed rulemaking and an opportunity for public comment prior to a rule's promulgation, amendment, modification, or repeal.'" *Humane Soc'y of the U.S. v. U.S. Dep't of Agric.*, 41 F.4th 564, 568 (D.C. Cir.), *reh'g denied*, 54 F.4th 733 (D.C. Cir. 2022) (quoting *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1044 (D.C. Cir. 1987)). The APA's notice-and-comment requirements are outlined in 5 U.S.C. § 553. When an agency seeks to promulgate a rule, section 553(b) requires the agency to publish a "[g]eneral notice of proposed rule making" in the Federal Register.[6] 5 U.S.C. § 553(b). The statute further provides that the notice "shall include . . . either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* Following notice, the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." *Id.* § 553(c). The agency is "free"—indeed, "encouraged"—to "modify [the] proposed rule[]" in response to the comments it receives from the public. *Ne. Md. Waste Disposal Auth. v. E.P.A.*, 358 F.3d 936, 951 (D.C. Cir. 2004); *see also*

---

[6] The APA defines "rule making" as an "agency process for formulating, amending, or repealing a rule." 5 U.S.C. § 551(5). A "rule," in turn, is defined as "an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

*Kooritzky v. Reich*, 17 F.3d 1509, 1513 (D.C. Cir. 1994) ("It is an elementary principle of rulemaking that a final rule need not match the rule proposed, indeed must not if the record demands a change.").  Once the agency has fully considered the "relevant matter presented," 5 U.S.C. § 553(c), it may issue a final rule, provided that the final rule is a "'logical outgrowth' of the rule [the agency] originally proposed."  *Ne. Md. Waste Disposal Auth.*, 358 F.3d at 951–52 (quoting *First Am. Disc. Corp. v. Commodity Futures Trading Comm'n*, 222 F.3d 1008, 1015 (D.C. Cir. 2000)).

Here, DOL satisfied the notice requirement of section 553(b) when it issued the 2019 NPRM on July 26, 2019.  The 2019 NPRM announced DOL's intention to "amend [the agency's] regulations regarding the certification of temporary employment of nonimmigrant workers employed in temporary or seasonal agricultural employment," and explained that the proposed rulemaking would, among other things, "[a]mend[] . . . the current regulations" by "modernizing the H-2A program and eliminating inefficiencies."  *See* Temporary Agricultural Employment, 84 Fed. Reg. at 36,168.  The proposed rule then set out—at length and in detail— the "terms [and] substance" of the anticipated rule changes.  *See* 5 U.S.C. § 553(b)(3).  DOL gave the public sixty days to comment on the proposed rule, *see* Temporary Agricultural Employment, 84 Fed. Reg. at 36,168, and ultimately collected over 83,000 comments (including a letter submitted by NCAE) in that two-month period, *see* Temporary Agricultural Employment, 87 Fed. Reg. at 61,664.  The record demonstrates that DOL considered and responded to many of those comments.  *See generally* Temporary Agricultural Employment, 87 Fed. Reg. 61,660.  And NCAE does not dispute that the modifications to the 2019 NPRM that are reflected in the 2022 Rule are a "logical outgrowth" of the initial proposal.  *See Ne. Md. Waste Disposal Auth.*, 358 F.3d at 951–52 ("[A]n agency satisfies the notice requirement, and need not conduct a further

round of public comment, as long as its final rule is a 'logical outgrowth' of the rule it originally proposed." (quoting *First Am. Disc. Corp.*, 222 F.3d at 1015)).  All that being so, DOL did not deprive NCAE of its procedural right to notice-and-comment during the agency's promulgation of the 2022 Rule.

NCAE resists this conclusion.  The premise of NCAE's resistance is that the 2021 Rule—not the 2022 Rule—marked the culmination of the rulemaking process that began with the 2019 NPRM.  *See* Pl.'s Mot. at 21 ("The 2021 Rule was a final agency action and the culmination of DOL's rulemaking process.").  Building from that premise, NCAE contends that, to the extent DOL wished to promulgate a new rule (*i.e.*, the 2022 Rule) or amend or repeal the 2021 Rule, it needed to issue a fresh notice of proposed rulemaking and allow for a subsequent period of public comment.  *See* Pl.'s Mot. at 21–22; *see also Action on Smoking & Health v. C.A.B.*, 713 F.2d 795, 800 (D.C. Cir. 1983) ("If one rulemaking proceeding has culminated and another has begun, then new notice and comment procedures are required."); *Humane Soc'y*, 41 F.4th at 569 ("[O]nce an agency makes a rule . . . the APA requires the agency to provide notice and an opportunity for comment before repealing it.").

To assess NCAE's argument regarding the purported finality of the 2021 Rule, it is useful to first examine the D.C. Circuit's recent decision in *Humane Society of the United States v. United States Department of Agriculture*, 41 F.4th 564—the Circuit's latest precedent on the question of precisely when a rule becomes final such that it may not be withdrawn or repealed without notice-and-comment.  That case, like this one, involved the purported issuance of a regulation in the waning days of a presidential administration.  On January 11, 2017, as President Obama's administration was drawing to a close, the Department of Agriculture ("DOA") announced a final rule designed to protect show horses from abuse.  *Id.* at 565, 567.  DOA

announced the final rule by posting a "signed" version of the rule "on its website" and by releasing a "press release announcing that it had 'announced a final rule' that 'will be published in the Federal Register in the coming days.'"   *Id.* at 567 (cleaned up).  That same day, DOA "transmitted the rule to the Office of the Federal Register (OFR) for publication."  *Id.*  OFR proceeded to "internal[ly] process[]" the rule as "required by OFR regulations" and, following that processing, made the rule available for public inspection on January 19.  *Id.*  The rule was not, however, published in the Federal Register, and, on January 20, DOA "withdrew the rule from publication" pursuant to a memorandum issued by President Trump's chief of staff.  *Id.*

Following DOA's withdrawal of the rule, a group of plaintiffs filed suit.  *See id.*  As relevant here, the plaintiffs argued that DOA's rule had become final and, therefore, that DOA "unlawfully repealed the rule" when it withdrew the rule from OFR "without notice and comment or the reasoned decisionmaking that the Administrative Procedure Act requires."  *Id.*  The plaintiffs made two arguments in support of the rule's alleged finality.  First, they argued that the rule "became final when OFR made it available for public inspection."  *Id.* at 568.  In the alternative, they argued that the rule became final even earlier—specifically, on January 11, when DOA "posted [the rule] on its website."  *Id.* at 567–68.  For its part, the government argued that the rule never became final because it was never published in the Federal Register.  *Id.* at 568.

After conducting an extensive analysis of the Federal Register Act, the APA, and the Freedom of Information Act ("FOIA"), the D.C. Circuit rejected the government's position.  *See id.* at 568–72, 575.  The Circuit held that a rule becomes final—such that an agency must "undertake notice and comment before repealing it"—no later than the point at which the "rule [is] made available for public inspection in the Office of the Federal Register."  *Id.* at 575.  In so

holding, the Circuit expressly declined to consider the plaintiffs' alternative argument that the rule "passed [the finality] threshold even earlier" such as "when [DOA] posted the rule on its website." *Id.* And the Circuit was also careful to note that its holding did not purport to determine "when APA procedures attach to rules not yet on public inspection but enforceable against those with actual notice." *Id.*

Returning to the present case, NCAE does not dispute—nor could it—that OFR never made the 2021 Rule available for public inspection. In other words, there is no dispute that the 2021 Rule did not pass the finality threshold established by *Humane Society*. Instead, NCAE argues that the 2021 Rule was nonetheless a final rule because it was "final and conclusive" and because "notice" of the rule was "provided to the public." Pl.'s Mot. at 14 (quoting *Arlington Oil Mills, Inc. v. Knebel*, 543 F.2d 1092, 1099 (5th Cir. 1976)). NCAE's argument is unpersuasive for multiple reasons.[7]

First, NCAE argues that the 2021 Rule was a final rule because it represented DOL's "final and conclusive" determination on the matter and thus marked "the culmination of [DOL's]

---

[7] NCAE's proposed two-prong test for when a rule becomes final draws heavily from precedents explaining when agency action is "final" such that the APA permits judicial review. *See Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (explaining that "[t]he APA limits judicial review to '*final agency action*'" (emphasis added) (quoting 5 U.S.C. § 704)); *see also U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (explaining that agency action may be considered "final" for purposes of judicial review only if "the action . . . mark[s] the consummation of the agency's decisionmaking process . . . [a]nd . . . the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow" (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). NCAE does not cite any case in which a court has applied those precedents to assess a rule's finality in a case analogous to this one. Moreover, the *Humane Society* majority did not rely on those precedents to determine whether the rule at issue there had become final, despite the fact that the dissent discussed those cases at length. *See Humane Soc'y*, 41 F.4th at 579 (Rao, J., dissenting) (collecting cases and arguing that a rule does not constitute "final agency action" until the rule is published in the Federal Register). It thus seems doubtful that those precedents apply here. That said, the Court need not conclusively determine what weight to give NCAE's proposed two-prong test because, in all events, NCAE's argument fails even on its own terms.

decisionmaking process."  Pl.'s Mot. at 11, 14.  In support, NCAE emphasizes the fact that "DOL principal officers sign[ed] and submit[ed] [the 2021 rule] to OFR on January 11" and "simultaneously request[ed]" that OFR post the rule for public inspection on January 14 and publish the rule on January 15.  *Id.* at 14; *see also id.* at 11 ("DOL Defendants issued, prescribed, and duly promulgated the 2021 Rule by having designated agency officials, [Assistant Secretary] Pallasch and Administrator Stanton, sign and send that final agency action to OFR on January 11, 2021.").  Binding precedent indicates, however, that these facts alone do not suffice to show that a rule is "final" in the sense that it may not be withdrawn without notice-and-comment.

In *Kennecott Utah Copper Corporation v. United States Department of Interior*, the D.C. Circuit upheld the withdrawal from OFR of a purportedly final rule that the Department of the Interior ("DOI") had submitted to OFR on the last full day of the Bush I administration.  88 F.3d 1191, 1200, 1206 (D.C. Cir. 1996).  There, like here, a high-ranking DOI official had "directed a subordinate to send the [purportedly final rule] to [OFR] for publication as [a] final regulation[]." *Id.*  Also like here, the rule was "signed" by the relevant Assistant Secretary and transmitted to OFR to be filed for public inspection and then published.  *Id.* at 1200–01.  Despite these facts, the Circuit explained that the document sent to OFR on January 19, 1993 had "never bec[o]me a binding rule."  *Id.* at 1208.  It therefore held that DOI's subsequent withdrawal of the rule without notice-and-comment—which came before OFR posted the rule for public inspection— was permissible.  *See id.* at 1201, 1205–08.  Applied here, *Kennecott* suggests that, despite the actions DOL took to encourage OFR to post the 2021 Rule for public inspection prior to January 20, 2021, those actions alone were not enough to render the rule "final" and, relatedly, supports the view that DOL validly withdrew the rule following President Biden's inauguration.

Such a finding is not only consistent with *Kennecott*, it is also consistent with the relevant statutes and regulations governing the process agencies must follow to publish a final rule.  After all, the Federal Register Act "requires agencies to transmit to OFR the original and copies of any document required to be published in the Federal Register."  *Humane Soc'y*, 41 F.4th at 569; *see also* 44 U.S.C. § 1503.  Following transmittal to OFR, the applicable regulations require that "the document . . . then [be] 'held for confidential processing until it is filed for public inspection.'" *Id.* (quoting 1 C.F.R. § 17.1)).  During this brief processing period—that is, the period that "take[s] place *after* an agency transmits a document to the OFR and *before* the OFR makes the document available for public inspection"—the agency is still able to make amendments to the nearly-final rule.  *Kennecott*, 88 F.3d at 1205–06.  In fact, not only may the agency "correct mistakes" in the rule, it may also "withdraw" the rule from publication entirely, provided that the rule has not been posted for public inspection.  *See id.* at 1206; *accord GPA Midstream Ass'n v. U.S. Dep't of Transp.*, 67 F.4th 1188, 1195 (D.C. Cir. 2023) ("A final rule is not duly fixed at least until it is filed for public inspection with the Office of the Federal Register.  Until then, it may be withdrawn without explanation or notice and comment and is not valid and enforceable against the public at large." (internal citation and quotation marks omitted)).  The D.C. Circuit has explained that "permitting agencies to correct mistakes and even to withdraw regulations until virtually the last minute before public release . . . helps assure that regulations appearing in the Federal Register are as correct as possible in both form and substance," thereby "avoid[ing] the needless expense and effort of amending regulations through the public comment process when those corrections could have been made more easily before the documents' publication." *Kennecott*, 88 F.3d at 1206.  All that being so—and regardless of any intent that DOL officials may have harbored regarding the 2021 Rule's finality—DOL remained free to withdraw the

2021 Rule without notice-and-comment up until the moment it was "filed for public inspection"

by OFR.  *See GPA Midstream Ass'n*, 67 F.4th at 1195; *Kennecott*, 88 F.3d at 1205–09.  And

because that is true, the Court cannot find that the 2021 Rule represented, in NCAE's words, a

"final and conclusive" determination on the part of DOL.

      NCAE also argues that the 2021 Rule became final because the public was on "notice" of

the rule.  *See* Pl.'s Mot at 14 (arguing that "a rule becomes a 'rule'" when it represents a "final

and conclusive" determination *and* "notice is provided to the public" (citing *Arlington Oil Mills*,

543 F.2d at 1099)); *id.* at 19 ("The notice provided to the regulatory community regarding the

2021 Rule further solidifies the finality of that agency action." (cleaned up)).  In support, NCAE

relies on the proposition that "a person with actual notice" of agency action "is bound by [that]

action, even if the act which imparts constructive notice to others"—filing with the Federal

Register for publication—"has not yet occurred."  *Id.* at 19 (quoting *Indus. Union Dep't v.

Bingham*, 570 F.2d 965, 971 (D.C. Cir. 1977)); *see also Humane Soc'y*, 41 F.4th at 570 ("[B]oth

the Federal Register Act and FOIA contemplate prepublication enforcement against parties with

actual notice [of agency rules]."); *United States v. Aarons*, 310 F.2d 341, 348 (2d Cir. 1962) ("If

a person has actual notice of a rule, he is bound by it.").  To support its argument that its

members and the general public had "actual notice" of the 2021 Rule, NCAE points to the fact

that, on January 15, 2021, DOL "published the rule" on its website, held a stakeholder call to

announce the rule to the "regulated community," and issued a "press release [that] contained a

hyperlink to the 2021 Rule" and described the rule as "final."  *See* Pl.'s Mot. at 7, 10, 12, 15, 19–

21.

      The Court does not agree that this chain of events may be fairly construed to deem the

public "on notice" of the fact that the 2021 Rule was a final rule.  The fundamental difficulty

with NCAE's reliance on this chain of events is the fact that the version of the 2021 Rule that

DOL posted online—that is, the only version of the 2021 Rule of which the public could be said

to be "on notice"—contained a disclaimer explicitly stating that:

> This regulation has been submitted to the Office of the Federal Register (OFR) for
> publication, and is currently pending placement on public inspection at the OFR
> and publication in the Federal Register. This version of the regulation may vary
> slightly from the published document if minor technical or formatting changes are
> made during the OFR review process. Only the version published in the Federal
> Register is the official regulation.

*See* Marsh Decl., Ex. D; *see also Temporary Agricultural Employment of H-2A Nonimmigrants*

*in the United States* (Jan. 20, 2021), https://perma.cc/EZK4- JV35.  In other words, according to

DOL itself, the posted version of the 2021 Rule was subject to change.  To be sure, the

disclaimer refers to possible changes as slight "technical or formatting changes."  *Id.*  But such

changes can substantially alter the meaning and effect of a statute or regulation.  *See, e.g.*,

*Facebook, Inc. v. Duguid*, 592 U.S. 395, 403–04 (2021) (parsing the way a comma changes the

meaning of a statute).  And as discussed above, even though the disclaimer only referred to

"technical or formatting changes," nothing would have prevented agency officials from enacting

larger, more substantive changes so long as the rule had not been posted for public inspection.

*See Kennecott*, 88 F.3d at 1205–09; *Humane Soc'y*, 41 F.4th at 575.  Finally, there is evidence in

the record that suggests that NCAE itself was doubtful that the 2021 Rule represented DOL's

final word on the matter.  In an email sent the day that DOL posted the rule to its website,

NCAE's president and CEO observed that the 2021 Rule was "[l]ikely to be caught up in [the]

incoming administration's 60-day regulatory freeze" and that it was therefore "[h]ighly

questionable" that the rule would "see[] the light of day" in its present form.  *See* Marsh Decl.,

Ex. E.  For all these reasons, the Court finds that the document of which the public had "notice"

on January 15, 2021 was not a final rule.

### V.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 26) is

**DENIED**, and Defendants' cross-motion for summary judgment (ECF No. 27) is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 29, 2024                                    RUDOLPH CONTRERAS
                                                           United States District Judge